**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ETHAN FRANCIS,**

                                        **Plaintiff,**

    **vs.**                                                     **8:20-CV-01097**
                                                                **(MAD/DJS)**

**VILLAGE OF POTSDAM; JOHN C. BENSON,**
_Police Officer, Potsdam Police Department,_
_individually and officially_**; and JOHN DOE 1-3,**

                                        **Defendants.**
_____

**APPEARANCES:**                           **OF COUNSEL:**

**WOODRUFF LEE CARROLL P.C.**              **WOODRUFF LEE CARROLL, ESQ.**
334 Nottingham Road
Syracuse, New York 13210
Attorneys for Plaintiff

**JOHNSON LAWS, LLC**                      **APRIL J. LAWS, ESQ.**
646 Plank Road, Suite 205                  **HANNAH HYDE HAGE, ESQ.**
Clifton Park, New York 12065
Attorneys for Defendants Village of
Potsdam and John C. Benson

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff Ethan Francis ("Plaintiff") commenced this action on September 11, 2020,

alleging (1) excessive force, battery, negligence, and joint action/concert of action/conspiracy

against Defendants John C. Benson ("Defendant Benson"), Peter G. Lasalla ("Officer Lasalla"),[1]

and John Does 1-3; and (2) _Monell_ liability against Defendant Village of Potsdam.  _See_ Dkt. No.

---

[1] On August 8, 2022, the Court so-ordered a joint stipulation of discontinuance as to Officer
Lasalla and dismissed him from this action.  _See_ Dkt. No. 49.

1.  Presently before the Court is Defendants' motion for summary judgment.  *See* Dkt. No. 31.

Plaintiff opposes the motion, *see* Dkt. No. 40, and has filed a letter motion seeking "to be allowed

to conform the pleadings to whatever the [C]ourt decides on the Motion [for] Summary

Judgment."  *See* Dkt. No. 41 at 1.[2]

      For the reasons set forth below, Defendants' motion for summary judgement is granted

and Plaintiff's request to conform or amend the pleadings is denied.

## II. BACKGROUND

      On the night of September 13, 2019, Plaintiff and his friend David Johnson were drinking

at bars in Potsdam, New York.  *See* Dkt. No. 1 at ¶ 17.  After leaving the bar at approximately

2:00 a.m., Plaintiff and Mr. Johnson purchased some food from a food cart and then proceeded to

a nearby parking lot.  *See* Dkt. No. 45 at ¶¶ 8-10.  While standing in the parking lot with Mr.

Johnson, Plaintiff attempted to call a number of friends for a ride home to no avail.  *See* Dkt. No.

42-4 at ¶ 11.  When no one answered his calls, Plaintiff threw his phone to the ground in

frustration, but eventually retrieved the phone.  *See id.* at ¶¶ 12-13; Dkt. No. 42-3 at ¶¶ 21-22.

      Officer Lasalla testified that he was on routine patrol on the evening in question.  *See* Dkt.

No. 42-9 at 10.  While on patrol, Officer Lasalla observed Plaintiff throw his phone on the ground

and then get into a physical altercation with Mr. Johnson.  *See id.*; *see also* Dkt. No. 45 at ¶ 22.

At this point, Officer Lasalla radioed in what he had observed, parked his patrol vehicle, and

made contact with Plaintiff and Mr. Johnson.  *See id.*  Defendant Benson and Officer Davis

responded to the scene shortly thereafter.  *See id.* at 10-11.  Officer Lasalla further stated that,

---

[2] Defendants John C. Benson, Peter G. Lasalla, and Village of Potsdam filed an answer on
November 17, 2020.  *See* Dkt. No. 5.  Discovery is closed.  *See* Dkt. Nos. 23, 27.

when Plaintiff and Mr. Johnson observed him exiting his patrol vehicle, they stopped fighting. *See id.* at 11. At this point, the parties' versions of what transpired next differs significantly.

Plaintiff claims that he "politely walked up to Officer Lasalla after he arrived" and stopped advancing when requested by the officer. *See* Dkt. No. 46 at ¶¶ 23-25. Plaintiff then claims that Defendant Benson pushed him for no reason, though Plaintiff also states that Defendant "Benson was in his car when [Officer] Lasalla told [Plaintiff] to keep his distance and [Officer] Lasalla put his hand on his shoulder and pushed [Plaintiff] backward." *Id.* at ¶¶ 38-39. Upon being escorted to the car, Plaintiff alleges that he simply turned to talk to Defendant Benson, *see* Dkt. No 40-1 at ¶ 111, at which point Defendant Benson did not use verbal commands but rather slammed him into the side of the police car. *See* Dkt. No. 42-2 at 14. Plaintiff claims he "slid to the ground in pain." *See* Dkt. No. 46 at ¶ 59. Plaintiff also claimed after "pinning" him against the police car, *see* Dkt. No. 40-1 at ¶ 62, Defendant Benson and Officer Lasalla "had a knee on me and my back and neck were being contorted and the damaged disks were in pain." *Id.* at ¶ 66. Plaintiff continues that "[a]fter that [Defendant] Benson searched me after forcing me onto my knees, my body was pressed, his elbow held my head against my shoulder and he applied his body weight from behind." *Id.* at ¶ 69. "Then [Plaintiff] was dragged by [his] heels and [Defendant] Benson had manipulated [Plaintiff's] body into positions that [his] damaged spine could not take." *Id.* at ¶ 70. Plaintiff was then placed in the police car. *See id.* at ¶ 71.

From Defendants' perspective, Officer Lasalla warned Plaintiff to stop walking, and when he failed to do so, Officer Lasalla "pushed [Plaintiff] backward lightly." Dkt. No. 46 at ¶ 26. Defendant Benson came out of his patrol car, heard Officer Lasalla's requests, and pushed Plaintiff back. *See id.* at ¶¶ 37-40; *see also* Dkt. No. 40-1 at ¶¶ 41-43; Dkt. No. 31-11 at 30. Defendant Benson detained Plaintiff, holding his arms behind his back and handcuffing him. *See*

3

Dkt. No. 46 at ¶¶ 41-45.  Defendant Benson "began escorting Plaintiff to the patrol vehicle at which time Plaintiff turned into [Defendant] Benson, lowered his shoulder and made contact with [Defendant] Benson," and then "[Defendant] Benson utilized the patrol vehicle for leverage in (re)gaining control of Plaintiff before Plaintiff lowered himself to the pavement."  Dkt. No. 31-11 at 30.  Then Defendant Benson "attempt[ed] to de-escalate and gain Plaintiff's compliance" before Plaintiff was helped to his feet and put in the police car.  *Id.*

Throughout the interaction, Plaintiff would not tell the officers his name when ordered to do so.  *See* Dkt. No. 46 at ¶ 74.  Plaintiff was charged with obstruction of justice, littering, disorderly conduct,[3] criminal mischief, and resisting arrest.  *See id.* at ¶ 85.  Plaintiff eventually pled guilty to the littering charge, and the remaining charges were dismissed.  *See id.* at ¶ 117.

Police brought Plaintiff to the police station, where he refused medical assistance.  *See id.* at ¶ 119.  Plaintiff claims to have suffered various injuries because of the incident requiring him to seek medical care.  *See* Dkt. No. 1 at ¶ 25.  Plaintiff claims to have had back issues prior to the underlying incident.  *See* Dkt. No. 42-3 at ¶ 7; *see also* Dkt. No. 40-1 at ¶ 7.

Defendants' motion for summary judgment argues that (1) Plaintiff's failure to comply with Federal Rule of Civil Procedure 8 warrants dismissal; (2) Plaintiff's excessive force claim is meritless; (3) Plaintiff lacks specific allegations of personal involvement against Defendant Benson; (4) the complaint must be dismissed against Defendant Village of Potsdam; (5) Defendant Benson is entitled to qualified immunity; and (6) Plaintiff's pendent state law claims are meritless.  *See* Dkt. No. 31-11.

### III. DISCUSSION

---

[3] The disorderly conduct charge was based on an altercation between Mr. Johnson and Plaintiff that Plaintiff denies occurred.  *See* Dkt. No. 46 at ¶¶ 87-91.

A.      **Standard of Review**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions on its pleadings. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56 (c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the Court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the Court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

"'Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.'" *Jeffreys v. City of New York*, 426 F.3d 549, 553-54 (2d Cir. 2005) (quotation omitted). "However, '[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be

evidence on which the jury could reasonably find for the plaintiff.'" *Id.* (quoting *Anderson*, 477 U.S. at 252). "To defeat summary judgment, therefore, nonmoving parties 'must do more than simply show that there is some metaphysical doubt as to the material facts', ... and they may not rely on conclusory allegations or unsubstantiated speculation.'" *Id.* (quotations omitted).

**B.    Rule 8**

In their motion for summary judgment, Defendants contend that Plaintiff's complaint fails to comply with Rule 8 in that "Plaintiff has neither stated grounds for this Court's jurisdiction or provided a short and plain statement of Plaintiff's entitlement to relief." Dkt. No. 31-11 at 20. The Court disagrees.

In his complaint, Plaintiff alleges that Defendants subjected him to "excessive force in violation of the Fourth Amendment and Fourteenth Amendment[ ] and other sections of the Constitution of the United States of America." Dkt. No. 1 at ¶ 22. Additionally, Plaintiff's civil action cover sheet submitted with the complaint indicates that Plaintiff's claims are being brought pursuant to 42 U.S.C. § 1983. As such, the complaint clear sets forth the basis for this Court's subject matter jurisdiction over the claims. *See* 28 U.S.C. § 1331.

Moreover, the Court disagrees that the complaint fails to set forth a short and plain statement of the facts. The complaint provides the identities of two of the responding officers, where the incident occurred, the date on which the incident occurred, and a basic summary of the relevant facts. Such allegations are sufficient for purposes of Rule 8.

**C.    Excessive Force**

Defendants assert that they are entitled to summary judgment because Defendant Benson did not use excessive force as a matter of law, as Defendant Benson's use of force was objectively

reasonable. *See* Dkt. No. 31-11 at 23.  The Court agrees.

"Excessive force claims related to an arrest or seizure are evaluated under the Fourth Amendment using an 'objective unreasonableness' standard." *Bogart v. City of New York*, No. 13-CV-1017, 2016 WL 4939075, *7 (S.D.N.Y. Sept. 6, 2016) (quoting *Graham v. Connor*, 490 U.S. 386, 388 (1989)).  Because the force used in the present matter occurred during Plaintiff's arrest, his claims are properly analyzed under the reasonableness standard set forth in *Graham*.

"The Fourth Amendment prohibits the use of excessive force in making an arrest, and whether the force used is excessive is to be analyzed under that Amendment's reasonableness standard.'" *Outlaw v. City of Hartford*, 884 F.3d 351, 366 (2d Cir. 2018) (quoting *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015)).  "The 'proper application' of this standard 'requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* (quoting *Graham*, 490 U.S. at 396).

The reasonableness determination must include consideration of the fact that law enforcement officers often are forced to make quick decisions under stressful and rapidly evolving circumstances rendering the calculation of what amount of force is reasonable difficult. *See Graham*, 490 U.S. at 396-97.  Relevant factors include the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether the suspect was actively resisting arrest. *See Brown*, 798 F.3d at 100 (citing *Graham*, 490 U.S. at 396).  As to the third factor, "[t]he fact that a person whom a police officer attempts to arrest resists, threatens, or assaults the officer no doubt justifies the officer's use of *some* degree of force, but it does not give the officer license to use force without limit.  The force used by the officer

must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer." *Sullivan v. Gagnier*, 225 F.3d 161, 165-66 (2d Cir. 2000) (emphasis in original). As an example, the use of force is justified where [a] plaintiff "charged at" officers. *Allaway v. McGinnis*, 473 F. Supp. 2d 378, 382 (W.D.N.Y. 2007). Further, "'reasonable force does not become unconstitutional merely because it caused the plaintiff serious injury.'" *Otero v. Town of Southampton*, 194 F. Supp. 2d 167, 180 (E.D.N.Y. 2002) (quoting *Gonzalez v. City of New York*, No. 98-CV-3084, 2000 WL 516682, *4 (E.D.N.Y. Mar. 7, 2000)), *aff'd*, 59 Fed. Appx. 409 (2d Cir. 2003). Moreover, to support an excessive force claim, the plaintiff must establish that the defendant used more than de minimis force. *See Feliciano v. Thomann*, 747 Fed. Appx. 885, 887 (2d Cir. 2019). Even conduct that caused some physical pain and resulted in side effects need not be compensated if a jury finds that such injuries were de minimis. *See Kerman v. City of New York*, 374 F.3d 93, 123 (2d Cir. 2004).

Plaintiff alleges that Defendant Benson used excessive force when (1) he shoved Plaintiff backwards away from Officer Lasalla; (2) he pushed Plaintiff backwards against the side of a police car; (3) when he restrained Plaintiff against the police car and on the ground; and (4) when he dragged Plaintiff by the heels.

Defendant Benson's "shoving" Plaintiff backwards, pushing Plaintiff against the car, and restraining of Plaintiff against the car and on the ground are not uses of excessive force as the degrees of force used were reasonable under the circumstances. Plaintiff continually disobeyed orders and acted belligerently. *See* Dkt. No. 31-6, Benson Vid. ("Benson Vid."), at 00:31-00:40, 02:30-02:54, 03:03-03:09, 03:30-03:43, 06:04-07:15; Dkt. No. 31-6, Lasalla Vid. ("Lasalla Vid."), at 02:23-02:37, 03:30-03:47, 04:00-05:10; Dkt. No. 46 at ¶ 59. A police officer may use force on a suspect as long as such force was not "beyond what was necessary to subdue

[Plaintiff]." *Husbands ex rel. Forde v. City of New York*, 335 Fed. Appx. 124, 129 (2d Cir. 2009). In applying the *Graham* factors here, Plaintiff was not being cooperative, may have posed a threat to the safety of Officer Lasalla and Defendant Benson by stepping forward after being directed to step back, turning around while being escorted to the vehicle, and by failing to take his hands out of his pockets. While the crimes at issue may not be that severe, Plaintiff was highly intoxicated, difficult to communicate with, and actively resisted orders. Throughout these interactions, Defendant Benson, along with the other officers, attempted to subdue an intoxicated and belligerent Plaintiff, and sought Plaintiff's compliance with their orders. While Plaintiff is being held against the car no officer has a knee on him. *See* Benson Vid. at 02:36-03:09; Lasalla Vid. 02:50-03:45. While it is not clear from the videos whether Defendant Benson had a knee on Plaintiff while Plaintiff was on the ground, even if he did, such action was just enough to subdue Plaintiff and Plaintiff kept on communicating with officers. Plaintiff had resisted orders to get up, and was flailing on the ground and Defendant Benson responded by subduing him on the ground. As such, Defendant Benson's actions were reasonable uses of force under the circumstances. *See Husbands ex rel. Forde*, 335 Fed. Appx. at 129.

Plaintiff claims that he was dragged by his heels. *See* Dkt. No. 46 at ¶ 66. This claim is "blatantly contradicted" by the video evidence. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *see* Benson Vid. at 05:07-07:23. The video shows that after lowering to the ground, Plaintiff is helped to his feet and placed into the patrol car—no heel dragging by officers, including Defendant Benson, occurred. *See id.* at 07:05-07:35.

Accordingly, Defendants' motion for summary judgment on Plaintiff's excessive force claim is granted. However, even if the force used was excessive, Defendant Benson is also entitled to qualified immunity.

**D.      Qualified Immunity**

"The doctrine of qualified immunity shields public officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

> For a constitutional right to be "clearly established" for purposes of determining whether an officer is entitled to qualified immunity, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that *in the light of pre-existing law the unlawfulness must be apparent*."

*Mollica v. Volker*, 229 F.3d 366, 370-71 (2d Cir. 2000) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (emphasis in original).

"Where the right at issue in the circumstances confronting police officers … was clearly established but was violated, the officers will nonetheless be entitled to qualified immunity 'if … it was objectively reasonable for them to believe their acts did not violate those rights,'" *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007) (quotation and other citation omitted), meaning "officers of reasonable competence could disagree on the legality of the action at issue in its particular factual context." *Id.* (quotations omitted).  "'A contention that ... it was objectively reasonable for the official to believe that his acts did not violate those rights has its principle focus on the particular facts of the case.'"  *Id.* (quotation and other citations omitted).

"[T]he case law is clear that officers are permitted to use some force to effectuate a search or an arrest." *Genovese v. Town of Southampton*, 921 F. Supp. 2d 8, 22 (E.D.N.Y. 2013) (citing *Graham*, 490 U.S. at 386).  "'[Q]ualified immunity protects officers from the sometimes hazy

border between excessive and acceptable force.'" *Genovese*, 921 F. Supp. 2d at 22 (quoting

*Kerman v. City of New York*, 261 F.3d 229, 239 (2d Cir. 2001)).

Here the undisputed facts establish that Defendant Benson's actions were objectively

reasonable. "The fact that a person whom a police officer attempts to arrest resists ... no doubt

justifies the officer's use of some degree of force, but it does not give the officer license to use

force without limit." *Sullivan*, 225 F.3d at 165-66. A police officer may be entitled to qualified

immunity for shoving an individual. *See Pajazetovic v. City of Utica*, No. 18-CV-1496, 2021 WL

4440473, *8 (N.D.N.Y. Sept. 27, 2021) (finding qualified immunity where officer shoved an

individual who was arguing with a firefighter away from that firefighter). Plaintiff failed to

follow Officer Lasalla's orders, and took a step towards Officer Lasalla after being told to step

back. *See* Benson Vid. at 00:31-00:40. Plaintiff continued to be belligerent and yelled at the

officers, and refused to follow orders. *See* Lasalla Vid. at 02:23-02:37; Benson, Vid. at 02:50-

02:54, 06:04-07:15. Each of the actions prior to and after getting into the car were objectively

reasonable. Each of these actions was a reasonable officer's response to a belligerent individual

resisting orders and attempting to subdue the individual. The video shows Plaintiff as continually

resistant, non-compliant, and belligerent, and Defendant Benson's actions, if excessive, are

entitled to qualified immunity. As such, the Court grants Defendants' motion for summary

judgment as to Plaintiff's excessive force claim on this alternative ground.

## E.     Plaintiff's *Monell* Claim

Plaintiff has dropped his *Monell* claim against Defendant Village of Potsdam. *See* Dkt.

No. 40-10 at 13-14 (acknowledging that Defendant Village of Potsdam's regulations "are

adequate" and that Plaintiff's ability to establish "multiple cases of excessive force over time … is

lacking"). Accordingly, Defendants' motion for summary judgment on Plaintiff's *Monell* claim

against Defendant Village of Potsdam is granted.

**F.      Plaintiff's State Law Claims**

Where, as here, a district court has dismissed all claims over which it has original

jurisdiction, the court may decline to exercise supplemental jurisdiction over remaining state-law

claims.  *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726

(1966); *Klein & Co. Futures, Inc. v. Bd. of Trade of City of New York*, 464 F.3d 255, 262 (2d Cir.

2006).  The decision is a discretionary one, and its justification "lies in considerations of judicial

economy, convenience and fairness to litigants[.]"  *United Mine Workers of Am.*, 383 U.S. at 726;

*see also Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Once a

district court's discretion is triggered under § 1367(c)(3), it balances the traditional 'values of

judicial economy, convenience, fairness, and comity,' in deciding whether to exercise

jurisdiction") (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  "'[I]n the

usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will

point toward declining to exercise jurisdiction over the remaining state-law claims.'"  *Kolari*, 455

F.3d at 122 (quoting *Cohill*, 484 U.S. at 350 n.7).

Here, after carefully considering the relevant factors, *i.e.*, economy, convenience, fairness,

and comity, the Court finds that they weigh in favor of declining to exercise supplemental

jurisdiction over Plaintiff's remaining state-law claims.  *See Kolari*, 455 F.3d at 122 ("'Needless

decisions of state law should be avoided both as a matter of comity and to promote justice

between the parties, by procuring for them a surer-footed reading of applicable law. … [I]f the

federal law claims are dismissed before trial … the state claims should be dismissed as well'")

(quoting *Gibbs*, 383 U.S. at 726).

Accordingly, Defendants' motion for summary judgment on Plaintiff's state law claims is

granted.

**G.     Leave to Amend**

Rule 15 of the Federal Rules of Civil Procedure provides that a court should "freely give leave" to amend the pleadings "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "A decision to grant or deny a motion to amend is within the sound discretion of the trial court."  *Werking v. Andrews*, 526 Fed. Appx. 94, 95 (2d Cir. 2013).  The Second Circuit has held that "'considerations of undue delay, bad faith, and prejudice to the opposing party [are] touchstones of a district court's discretionary authority to deny leave to amend.'"  *Krumme v. WestPoint Stevens Inc.*, 143 F.3d 71, 88 (2d Cir. 1998) (quotation omitted); *see also AEP Energy Services Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) ("The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith") (quotation omitted).  Amendment is "'especially prejudicial … [when] discovery had already been completed and [non-movant] had already filed a motion for summary judgment.'"  *Id.* (quoting *Ansam Associates v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985)); *see also Werking*, 526 Fed. Appx. at 96.

Here, Plaintiff requests leave to "conform the pleadings to whatever the court decides on the Motion of Summary Judgment."  Dkt. No. 41.  However, this case is two years old, discovery has ended, and a motion for summary judgment and a response have already been submitted.  In recognition of the prejudice that would result from allowing amendment at this late stage, the Court denies Plaintiff's motion for leave to amend the pleadings.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment (Dkt. No. 31) is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's motion for leave to amend the pleadings (Dkt. No. 41) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with Local Rules.

**IT IS SO ORDERED.**

Dated:  March 27, 2023
       Albany, New York

Mae A. D'Agostino
U.S. District Judge